## Crater's Estate.

*Decedents' estates—Election to take against will—Act of April 21, 1911.*

A widow, to whom had been bequeathed the whole of decedent's estate, accepted the benefits of the same without filing an election to take under her husband's will, and executed an agreement in regard to decedent's interest in a partnership of which he was a member and released the partnership, the individual copartners and executor from all liability, but, subsequently, after six years filed an election to take against the will: *Held,* that the election filed to take against her husband's will was invalid and of no effect.

Act of April 21, 1911, P. L. 79, considered.

Citation to file an account. O. C. Northampton Co.

*Calvin F. Smith,* for petitioner.

*H. J. Steele* and *O. Serfass,* for respondent.

McKEEN, J., July 7, 1924.—Upon the petition of Blanche F. Crater, a daughter of John W. Crater, deceased, a citation issued, directed to Frank E. Crater, surviving executor of the last will and testament of said decedent, (1) to show cause why he should not file an account, and (2) to show cause why the distributive share of the petitioner in the estate of decedent should not be paid to her.

John W. Crater died, testate, on Nov. 19, 1914, leaving to survive him a widow, Kate B. Crater, and the following children, to wit, Elizabeth E., intermarried with James Kenneth Satchel; Blanche F. Crater, John S. Crater and Dorothy L., intermarried with Glenn G. Klock. The last will and testament of decedent, bearing date Dec. 21, 1907, was duly probated at the office of the Register of Wills in and for the County of Northampton, and letters testamentary were issued unto Frank E. Crater and Joseph K. Crater, surviving executors mentioned in said will. At and immediately before the decease of John W. Crater, both Frank E. Crater and Joseph K. Crater (surviving executors mentioned in said will), together with decedent, were members of a copartnership, trading under the firm name of Joseph F. Crater's Sons. Under the provisions of said last will and testament, testator devised and bequeathed all of his property, real, personal and mixed, unto said Kate B. Crater, her heirs and assigns forever. The will authorized and empowered the acting executor or executors "to make any arrangements which to him or them may seem just or reasonable for the settlement and adjustment, with my surviving partner or partners, of all my rights and liabilities in any business in which I may be engaged as a partner at the time of my death, with full power to accept for my estate as the value of my share and interest in said business, a sum estimated and agreed upon; and to make any arrangements for giving time (meaning thereby extension of credit) to my surviving partner or partners and for accepting payments from him or them in such instalments as they, my executors, may think proper; and generally to act in the premises in such manner as the person or persons exercising this power shall think proper, without being liable for any loss which may be occasioned thereby." The testator further directed that no inventory and appraisement of his personal estate be filed in the Register of Wills' Office of Northampton County, or elsewhere, that no account be filed, and no legal proceedings be had other than the probate of his will.

On Nov. 10, 1916, Frank E. Crater, Joseph K. Crater and W. Everitt Crater, trading under the firm name of Joseph F. Crater's Sons, parties of the first part; Frank E. Crater and Joseph K. Crater, executors of the will of John W. Crater, deceased, parties of the second part; Frank E. Crater, surviving

executor of and trustee under the last will and testament of Joseph F. Crater, deceased, party of the third part; and Kate B. Crater, surviving widow and sole legatee under the will of said John W. Crater, deceased, party of the fourth part, entered into an agreement with regard to the interest of John W. Crater, deceased, in the copartnership of Joseph F. Crater's Sons, and the disposition thereof, which said agreement, in section 7 thereof, provided further: "It is agreed by the parties hereto having special interest therein that no inventory or account or any proceedings shall be filed or taken by the said executors in the settlement of the estate of John W. Crater, deceased." On the same date of the execution of the agreement, Kate B. Crater, widow of John W. Crater, deceased, in consideration of the terms and conditions of said agreement, executed and delivered her full and complete release, in which she remised, released, quitclaimed and forever discharge the copartnership of Joseph F. Crater's Sons, the individual copartners therein, the executors of John W. Crater and the estate of Joseph F. Crater, of and from all claims or demands or demand arising out of any interest the said John W. Crater, deceased, had in the copartnership of Joseph F. Crater's Sons, and in the estate of Joseph F. Crater, deceased, as well as any interest that she had in the estate of her said husband.

On June 2, 1921, Kate B. Crater, widow of John W. Crater, deceased, elected, by an instrument in writing and duly acknowledged, to take against the last will and testament of decedent, and filed her said election on June 4, 1921, with Frank E. Crater, surviving executor of decedent. Subsequently, upon the petition of William Everitt Crater, a member of the copartnership of Joseph F. Crater's Sons, a citation was awarded, praying for permission to intervene and become a party defendant in the proceedings commenced by Blanche F. Crater against the surviving executor of the estate of John W. Crater, deceased, and to which citation the said Blanche F. Crater made answer with prayer to dismiss.

Depositions taken in open court establish that the terms of the agreement to which Kate B. Crater was a party had been carried out and that she has received full consideration and the benefits thereunder. It does not appear that, subsequent to the filing of the election by the widow of decedent, any offer of restitution has been made on her part of all or any part of the benefits which she received from the surviving executor of her husband.

Both of the citations before the court are predicated upon the validity of the election of the said Kate B. Crater to take against the will of her husband. The petitioner for the accounting rests her claim under the provisions of the Act of April 21, 1911, P. L. 79. Excepting for this act, under the facts as presented, the petitioner would have no standing and would be bound by the agreement and release executed by her mother. Section 1 of the Act of 1911 provides: "That surviving husbands or wives electing to take under or against the wills of decedents shall, in all cases, manifest their election by a writing signed by them, duly acknowledged by them before an officer authorized by law to take the acknowledgment of deeds, and delivered to the executor or administrator of the estate of such decedent." Section 2: "No payment from the estate of such decedent shall be made to any husband or wife unless his or her election shall have been duly executed, acknowledged and delivered as provided by the 1st section of this act." The petitioner urges the court that the provisions of the Act of 1911 are mandatory, and any payments made by the executors to the widow without compelling the filing of an election were unlawful; also, that, under the provisions of the act, the widow not being estopped by any time limit in filing her election, the petitioner, as an

heir-at-law of decedent, is a party in interest and entitled to an accounting from the executors. In support of this theory, the court's attention has been called to the opinion of Mr. Justice Walling in Beck's Estate, 265 Pa. 51, where it was held: "Where a widow files with the register of wills an election to take under her husband's will, but does not acknowledge it or serve it upon the executor, she is not estopped thereby from subsequently executing and acknowledging an election to take against the will, addressed to and given to the executor with a request that it be duly recorded as required by the Act of April 21, 1911, P. L. 79. In such a case, the widow does not lose her right to take against the will by a delay of fifteen months in making her election; nor can the executor claim an estoppel against her election because he paid certain monthly sums to her for the support of herself and children, no rights of third parties having intervened. Such moneys can be accounted for on settlement of the estate."

It will be observed, however, that the facts presented in the case at bar are entirely different from those in the above cited case. There, the estate had not been settled, nor had the rights of third parties intervened, nor had the widow been given the entire estate, and the moneys received by the widow could be accounted for on the settlement of the estate. In the case at bar, an unusual and remarkable situation is presented, that of a widow who has received, under the terms of testator's will, the entire estate, and who has made no offer of restitution, electing to take against the testator's will against her own interest. The 1st section of the Act of 1911 imposes a duty upon the widow to elect to take under or against the will, and prescribes the method. The 2nd section of the act is restrictive and provides that no payments shall be made to the widow unless she shall have made the election prescribed in the 1st section. The failure of the widow to elect simply affected her right to receive any payments under the provisions of the will. No penalty being prescribed for the failure on the part of either the widow or the executors to observe any of the provisions of the act, the payment made by the executors, the acceptance by the widow under the agreement between the parties interested in the copartnership et al., and her release to the executors, amounts to a waiver of any duty imposed either upon the widow or the executors by the provisions of the act.

It has been held in other jurisdictions: "No election is necessary when the widow is sole heir of the decedent, or where she is the donee, under the will, of the entire estate:" 40 Cyc., 1971. The copartnership agreement which decedent entered into on March 1, 1904, consisted of four members, William E. Crater, John W. Crater (decedent), Frank E. Crater and Joseph K. Crater, and contained a clause which provided that, in the event of the death of one or more of the partners, the other copartners should have the privilege of purchasing the deceased partner's interest in the firm at the price or value at which the same stood upon the books of the firm at the end of their current fiscal year, and prescribed the method of payment to the deceased partner's representatives for his interest. Prior to the date of decedent's death, William E. Crater, one of said copartners, became deceased and his interest was acquired by his son, W. Everitt Crater. Subsequent to the time of decedent's death and prior to the election filed by his widow, Joseph K. Crater, one of said copartners, died and his interest in said copartnership was acquired by the surviving copartners, said Frank E. Crater and W. Everitt Crater. Through the delay of the widow of John W. Crater, deceased, in asserting her right of election under the Act of 1911 for a period of over six years, the rights of third parties have intervened, who had the right to believe that the

release of the widow, as sole legatee under the last will and testament of decedent, was made and entered into by her in good faith. Under the facts as presented to the court, the questions involved must be determined under equitable principles. The act of the widow in accepting the benefit of the estate of decedent and her execution of the agreement and release operates as an election to take under the will of her husband as fully and completely as if she had regularly filed her election so to do under the provisions of the Act of 1911, and the election which she filed with the surviving executor of decedent is invalid and of non-effect.

Counsel for the petitioner has urged the court that the agreement of Nov. 10, 1916, as well as the release of Nov. 10, 1916, signed by Kate B. Crater, mother of the petitioner, was obtained through fraudulent misrepresentations on the part of Frank E. Crater, surviving executor of the last will and testament of her deceased husband; that Kate B. Crater was not apprised of the size and amount of the estate of her deceased husband, but was deceived by declarations made to her, upon the faith and strength of which she executed the agreement and release, and which were entirely false, and in support of this she points to the recital contained in the agreement, wherein the following is stated: "Whereas, Joseph F. Crater, late of the City of Easton, County of Northampton and State of Pennsylvania, was in his lifetime seized of certain real estate in the State of Pennsylvania, and elsewhere, and being so thereof seized died, leaving a last will and testament duly admitted to probate in the Register of Wills' Office in and for the County of Northampton, Aug. 27, 1902, end entered in Will Book No. 14, page 614, wherein and whereby, *inter alia,* his residuary estate, consisting of real and personal property of which he died seized, is devised to his sons, William E. Crater, John W. Crater, Frank E. Crater, and in trust for Joseph K. Crater; and, whereas, said real estate was sold during the lifetime of John W. Crater, deceased, to the copartnership of Joseph F. Crater's Sons."

It is alleged that Kate B. Crater was informed at the time when she executed the agreement that all of the real estate of which Joseph F. Crater died seized and in which real estate, or the proceeds thereof, John W. Crater had a vested interest equal to one-fourth of the value of same had been sold and conveyed to the firm of Joseph F. Crater's Sons during the lifetime of John W. Crater; and this statement and declaration was preceded by the representation made to Kate B. Crater and to her counsel that the firm of Joseph F. Crater's Sons, of which John W. Crater was a member, was insolvent. These allegations raise the question of fraud as an inducing cause for the execution of the agreement and release in question. The agreement in question, to which all the copartners were parties, together with Kate B. Crater and surviving executors, after referring to the last will and testament of John W. Crater, deceased, sets forth the purpose thereof as follows: "Whereas, it is desired to settle, satisfy and adjust any and all interest, claim, property and right of John W. Crater, or his estate, or of Kate B. Crater, his widow and devisee, in the estate of Joseph F. Crater, deceased, and in the said firm of Joseph F. Crater's Sons; and to settle, satisfy and adjust any and all interests, claim, property and right coming to said Kate B. Crater under the last will and testament of John W. Crater, deceased; and the legacy coming to Dorothy Crater, a grandchild and beneficiary under the said will of Joseph F. Crater, deceased."

In determining the question of fraud, the court must be guided by the rule laid down under the Pennsylvania authorities, that fraud must be proven and the proofs must be of such a character as to lead to no other conclusion, and

the evidence in support of such an allegation must be clear, precise and indubitable. The agreement of Nov. 10, 1916, was witnessed by the personal counsel for Kate B. Crater, and contains the recital, "said real estate was sold during the lifetime of John W. Crater, deceased, to the copartnership of Joseph F. Crater's Sons." The actual transfer of the title to this real estate took place Dec. 2, 1914, after the decease of John W. Crater, but almost two years previous to the recited agreement. The real estate in question was the property of the estate of Joseph F. Crater. Joseph F. Crater devised his real estate to his sons. All of his sons were members of the copartnership known as Joseph F. Crater's Sons, under agreement executed Nov. 14, 1902. Subsequent to that date, the firm collected the rents, paid all expenses and distributed the income as if it were partnership property. The books of the firm show this from 1902 to the date of the agreement. The executors of Joseph F. Crater accounted for the proceeds of the sale of this real estate, and John W. Crater, or his estate, participated in the distribution. Previous to the death of John W. Crater, deeds were prepared for the actual conveyance of this property to the firm. These deeds were prepared at the instance of John W. Crater and Frank E. Crater. They were unexecuted because of the illness and death of John W. Crater. After the death of John W. Crater, a statement was submitted to his widow of all the assets of the copartnership, which included the valuation of the real estate in question as carried upon the books of the firm. Kate B. Crater was represented by personal counsel, first by the firm of Kirkpatrick & Maxwell, and afterwards by Asher Seip, Esq. Mr. Seip testified that he went over the statement relating to the real estate with his client, and made personal inspection of the properties. He also made inquiries from gentlemen whom he thought were qualified to judge the value of real estate, and from the information thus acquired he concluded that the valuation placed upon the real estate was fair and reasonable. The agreement in question was executed by Kate B. Crater under the advice of her personal counsel, Asher Seip, Esq., who had first satisfied himself by a personal investigation concerning the interests of his client. Under these circumstances, the recital as to the real estate in the agreement is corroborated, that same had been sold to the firm during the lifetime of John W. Crater, but not actually conveyed until after his death. All of the written evidence, including the books of the firm, lead to this conclusion, that Kate B. Crater was not induced to execute the agreement and release in question through any false representations, as alleged by petitioner. The citation awarded upon the petition of William Everitt Crater, a surviving partner of the copartnership of Joseph F. Crater's Sons, to intervene and become a party defendant in the proceedings commenced by Blanche Crater, as stated before, is predicated entirely upon the validity of the election of Kate B. Crater to take against the will of her husband, and, in view of the determination of the invalidity of this election, discussion of the right of intervention is unnecessary.

And now, July 7, 1924, the citation awarded Blanche F. Crater, a daughter of John W. Crater, deceased, as well as the citation awarded to William Everitt Crater, surviving partner of the copartnership of Joseph F. Crater's Sons, are dismissed, at the cost of the respective petitioners.

From Henry D. Maxwell, Easton, Pa.